When you reference the record this one's a pretty big one so my colleagues I'm sure have memorized it I have not so please give us a record site when you refer to the record and please recall that rebuttal is for rebuttal only so with that we will call case number 19-20841 SED Holdings v. TM Property Solutions and we'll begin with Mr. Reagan. Your Honor, may it please the court. There's old action that's applicable to this case. We live by the sword. Here SED made a intentional choice to intervene in the Tarrant County lawsuit, assert a declaratory judgment action seeking clear negotiable title to 1,235 loans each and every loan involved in this case. SED then settled with Biltmore Funding II. At that point they didn't do what most litigants do. They didn't non-suit their case without prejudice or dismiss their case. Instead they agreed to cooperate with Biltmore II in getting a judgment. SED then went to trial, a trial on the merits, where they submitted proposed fines of fact and conclusions of law that included fraud fines, which they now admit in their brief that they never said for the Tarrant County. SED made the choice to intervene in Fort Worth, assert a declaratory judgment claim for each and every loan that's at issue in this case. They settled with Biltmore II. They didn't dismiss their case. They instead elected to go to a trial on the merits where they had all these fraud findings that they admit now in their brief that they never pled for. And then SED got a judgment, including all those fraud findings, which they never pled for. And they took those findings and they wielded them in North Carolina. They wielded them back in Tarrant County on the second lawsuit and they wielded them throughout this case here. So, um, Mr. I'm sorry, I've forgotten your name and it's not right. Mr. Reagan. Um, you were talking you representing the Highland defendants. I take it. It's I'm just trying to keep track of who's representing your parties. Um, and we're talking about race judicata here. So it seems to me that everybody agrees that the Texas law of race judicata applies and not the lawsuit arise out of the same transaction. Isn't that right? The same transaction or series of transactions? Okay, well, so maybe that's your answer. But it seems to me that the Tarrant County lawsuit is about a specific number of loans, not all of the loans, but only some of the loans that built more to loans, which is 400 something loans. Um, and so that's question one. Doesn't doesn't that defeat the application of race judicata that we're not really talking about all the loans were only talking about some of them. And in question two is, do we have to? Do we have to be concerned about how S. E. D. Intervened in that lawsuit? Because if it intervened in the in the Tarrant County lawsuit, sort of as aligned with three star merely to protect its interests in that the loans built more to loans, then is it? Is it really required under Texas law that it bring every claim it could have brought against three star given the posture in which it intervened? So that's question two. What do you make of all that? Sure. Uh, they answer your first question. Yes, if the Tarrant County lawsuit involved the same transaction or series of transactions or the same nucleus of operative facts as this case and res judicata applies two points to that one, their petition intervention mentioned the 1235 loans, and they referenced the specific agreement that we're litigating today. But secondly, I don't think it matters if they only litigated the 473 loans with three star Tarrant County. Under Texas law, you have to bring all your claims that you have against the party, including those claims that you could have asserted or you might have asserted or could have asserted with reasonable diligence, even if they're just cross claims against a party that you're aligned with. In other words, if I come in, I'm aligned with three star. I have to bring cross claims against them. Uh, in other words, all the claims that are that are the subject of this federal lawsuit. Is that Texas law? Well, to to answer your question one, S. C. D. S. Admitted throughout this case that they were adversaries with three star the first time they ever said they were quote unquote co parties that would be able to serve a cross claim was in their brief in this case. Uh, but they intervene and under Texas law believes the four motor case the intervener in situations like this, seeking declaratory relief, seeking affirmative relief. They're aligned as the plaintiff. So if S. C. D. Had won their case, uh, three star wouldn't have got any of the loans or built more for two wouldn't get along. They certainly were not aligned, and I believe they concede in their briefing in the district court below that there's no doubt or it's beyond doubt that they were adversaries with three star. Find that for you. They're required to bring claims in the Tarrant County lawsuit that were already pending in another lawsuit, say that maybe the county lawsuit that they had the same claims. If we assume that if we agree with you that they should have brought these claims in Tarrant County, weren't those claims already pending in Harris County? Uh, and shouldn't that matter for purposes of race to Dakota? The claims were, I believe, pending in Harris County, and they were pending in North Carolina. But under this court's precedent, I believe is like the Cox case in the the spoke foods case. Uh, that doesn't matter. Uh, those in those came Cox and smoked foods. They made that those defendants made that those plaintiffs made the same arguments. We had a pending case or we have a first first file case. The remedy there is to file a motion to abate and insert the dominant jurisdiction of whatever court you claim is the dominant jurisdiction. But once you intervene and you joined the lawsuit at that point, they were adverse to three star. They've admitted they were adverse to three star. And then at that point, they had to assert not only the claims they filed, but any claims they could have filed a reasonable diligence. It doesn't matter if they were already pending, and that's under Cox and smoked foods, and that's been the law on the Fifth Circuit for 35 years. One question I have is it seems like in that you have that chart on, like, page two of your yellow brief that seems to be focusing on kind of their admission. So almost never mind all this other stuff you've admitted you've argued when it benefited you, you argued X. And now you've decided to say not X. Is that part of your argument? Or are you solely relying on the discussion you've just had with Judge Duncan? No, I believe my argument is threefold. One. We have the were filed in this case in Harris County before removal. We have the petitioner intervention that's in the record that shows what the claims are. But the third prong in which covers all the basis of what happened at trial, I believe last year in Butler versus Endeavor Air, this court said, albeit in a procurement opinion, if the plaintiff concedes that these allegations are the same allegations before, then residue kind of applies. In this case, we asked Mr Cyphers on cross examination. We went through the litany of fraud findings from the Tarrant County judge, and we asked him Are these the same allegations you're making in this case? And he said yes. But more importantly, how the evidence of trial what happened at trial shows that this is the same nucleus of awkward facts in the same transaction is they relied on the Tarrant County judgment opening case in chief closing. They importantly, their damages model, their $4.3 million on plaintiffs exhibit 2 47 included the 1.5 million that was paid to built more funding to. So you take all that into consideration. Mr Cyphers is admission. They're heavily heavy reliance on the fraud finding from opening to close and to the fact that their their damages model necessarily included the money that to build more funny to. There could be no credible dispute that this involves the same transaction or the same subject matters. The lawsuit in Tarrant County. And if you look at their second amendment complaint, they say point blank point blank. The Tarrant County judgment is residue to contest the three star and anyone attempting to stand in three stars places. S. C. D. Has admitted that this is the same transaction. S. C. D. Has admitted that the highly group is in privity with three star. All the elements of residue to count have been established as a matter of law, either by their admissions, their pleadings in Tarrant County or what happened in the trial in this case. And the only real issue that's really in dispute is the issue of privity. Uh, beyond the we put in our mission that you referenced the chart that they've admitted that we were in privity when it was beneficial to them. But there's other legal basis is for establishing privity that we put forward from our brief, including the special relationship test, which this this circuit this court has adopted in, uh, somewhat similar context and other federal circuits have applied. Who do we have? Who do we Who do we have to find is in privity with whom? If in order to agree with you on the privity point, who are we looking for? Privity? The three star properties and the Highland defendants. All the Highland defendants. Okay, because S. E. D. Is alleged that we're all one entity that Highland has controlled the entire transaction. That three star was a shell company. That three star was a near inch instrumentality. Does that do the highlight? Forgive me for my ignorance. I get the parties confused a little bit. Do that. The Highland defendants. Does that include Bill Moore to who is the plaintiff in Tarrant County? Does not include the work to. They were not a party to this case by virtue of their settlement with S. E. D. Okay, all right. Let me turn to something else because you're starting to get a little bit low on time. I want to ask you about the sort of excessive amount of the judgment argument. Let's just assume argue endo that we reject your arguments on the merits of the, uh, liability, and we turn to the damages. Can you walk me through sort of the math of again, assuming argue endo, which I know you disagree with, that everything else is affirmed. What would be the math of the subtraction from the judgment that you would do if we didn't grant a new trial? We just wanted to do math. Walk me through that place. Sure. Uh, as we put forth in our brief, there were innumerable representations in pretrial order. Every witness S. E. D. Put on the stand. They all said their damages was between four and 4.6 million. I believe plaintiffs exhibit 2 47 put it at 44.3 and change. So that's kind of like the ceiling. 4.3 million 4.6. Then we started into subtractions. Brown and Associates paid 1.25 million for our settlement. So that's a credit. Mr Dykes paid, I believe, $25,000. So that's the credit. S. E. D. Sold the Biltmore two loans separate apart from this case, and they recovered 551,578 that we did not get a credit for. And then so we get down to, I believe that's around about $2.3 million. And then the question becomes, Do you take off the $2 million that they sent in July 2014 because they should have known the red flag of the lack of justifiable reliance when Mr Johnson sent them the service to the grid that says someone else owned these loans? Or do you take off the 1.5 million for Mr Mr Fleet? Undisputedly got undisputedly kept that no one on our side got a penny off. So we got about 2.3 million minus either two or the 1.5. So that's where I would put the math. It ends up. Can you walk me to what the judge actually granted in terms of the principal amount? Because I understand your argument about the lost profits and that minus. But I thought there was a two million in there that you were also taking out. Is that? That's a different two million than the two million you just mentioned. A lot of two million splitting around. Sure. Uh, at trial, the closing they was $10.68 million, which they've said was four point the 4.3 or the 4.6 plus the four million lost profits plus the second two million they sent in July 2014. Post trial. In our brief here, we said, Well, you're counting that second two million twice. It's the same two million, but it's counted several. So what you're saying is from the judges, um, judgment, you would take out the two million and the four million because of the duplicity and our duplication and also the lost profits. But then of the 4.6, you're saying on the merits of the 4.6, you should take out the two because they already knew all the problems by the time they got there. Correct. Okay. Uh, and I want to jump to the end of my argument here, uh, about why the judgment should be reversed as the three stars. Well, again, S. E. D. Treated us all is one. Uh, the three star in the Highland defendants are interwoven. S. E. D. Says, you know, three stars a shell company and mere instrumentality and Mr Highland controlled. So under this, uh, the Texas law on this course law, the court has discretion, I believe, or has the option to reversing as the three stars. Well, if it will afford us full and relief, and we're all here today because there's about 2.5 $3 million in the bankruptcy trustee's bank account that we're fighting over. So if the judge was reversed as to us, reverse and render was take nothing but not the three star. Well, S. E. D. Is gonna get the line share the money in the bankruptcy case because they'll have the larger claim. The 9.3 million of the judgment against three stars left undisturbed. And I think that I think that three stars should be reversed as well. I guess we reserve the rest of my time for rebuttal. Okay, thank you. Um, Mr Dress, your turn. Thank you, Your Honor. David Dress on behalf of S. E. D. Holdings. And I'll jump right to those matters that the court focused on, the first of which being race judicata and the context and the timing of this intervention is in December of 2014. S. E. D. Sued three star Mr Johnson, TM Property, Highland and Home Servicing in North Carolina. The next month, January of 2015, three star filed suit against S. E. D. In Harris County, and then in April of 2015 built more funding to a non party in the judgment claim against three star in Tarrant County. Seven months after that was when S. E. D. Filed its intervention and asserted a competing declaratory judgment claim that was reduced to judgment in June of 2016. And I want to focus the court's attention on September of 2016. September of 2016 is when built more, and that would be built more funding. One Mr Highlands Company and TM Property filed their intervention in the Harris County case, and there they filed an intervention in a motion to substitute, essentially asserting that they could step into the shoes of three star and pursue the breach of contract claims against S. E. D. And the hearing on that substitution intervention is found at the record on appeal at 13636 through 38. Those are the most important portions of that hearing, and there the court will see the Highland group takes the complete opposite position on this issue of race judicata and on the issue of the import of the Tarrant County action and the judgment in that action and S. E. D. S role in that action. The important part is to consider also that when that hearing was set to reconvene on voluntary bankruptcy was commenced against three star by built more and TM property. And I'll stop right there to make an important point. How could a party that asserts an involuntary or brings an involuntary bankruptcy against another party ever be in privity with them? It doesn't seem logical. I mean, the problem is, y'all are the ones who say they are. I mean, I think they wouldn't have thought so. But given where we are today, I mean, the fraud, the underlying fraud that brings us here today was three star. And so unless Highland is responsible for that, they shouldn't be here, right? So isn't that hasn't that been your position? And so they're now saying we may not have thought so, but you thought so. And so here we are. S. E. D. Has certainly taken that position, Your Honor. Admittedly, in the race judicata argument was kind of fighting both ways throughout, and it's complicated by the fact that you had to pending cases already that you had an intervention against the one non party involved in the underlying district court proceedings. And then, likewise, you have a default judgment. Um, and once the involuntary is commenced, three star is never really in a position to take any positions on the issue. So it doesn't fit cleanly into any of the race judicata precedent that I've seen before this court. But I would say that privity is determined by the court is a matter of law. It's not a matter of sound bite because the sound bite argument could, I think, go either way. And the one the one case that is relied on for this notion that a party can admit privity is the trans clean case out of the federal circuit, which was a different situation. That was a patent infringement case against a factor in the first case. The second case was against sellers of the allegedly infringing device or apparatus, and there it was held to be judicial estoppel because the plaintiff in that case took the position that the manufacturer in the sellers were in privity. And so it was a judicial estoppel issue. So, Mr Grace, I mean, I'm glad you brought up judicial estoppel because I'll be honest with you. I've gotten kind of tired of hearing the party say you said this, and then I said this, and you took this position, and that's all very interesting. But unless we're talking about judicial estoppel, then I'm not all that interested in what the party said. I mean, I know there's judicial estoppel as to one issue, but I don't think it's this issue. So what I would appreciate is if you just walk through, I assume you agree that the Texas law of race to the cotta applies here. I do, Your Honor. Okay, so if you would just walk through, I was asking your opposing counsel was this or was it not the same transaction or series of transactions in the Tarrant County lawsuit is in the is in the present federal lawsuit. Why don't you? Why don't you speak to that? I mean, I assume you disagree with your your colleague on that. I do, Your Honor. I did. My understanding of the question is, did the section second action involved the same claims that were raised or could have been raised in Tarrant County? And and so in talking about the Tarrant County action, there is nothing that required S. E. D. To sue those additional entities or assert those additional claims. S. E. D. Had already asserted those claims. It was intervening to protect its right. Tarrant County was built more funding to and three star concerning their loan sale agreement, and built more to was the only entity not controlled by Highland. S. E. D. Contested built more to his claim of title to those loans as collateral for the transaction between built more to and three star. And at the time, one thing that's important, Your Honor, is S. E. D. Had just filed a second show cause motion related the injunction in North Carolina. So at that time, it had a decision to make regarding what it would do in relation to these loans that were part of the bigger transaction, but they weren't the transaction. S. E. D. Was not aware that these multiple transactions were going on behind the scenes as it was entering into its agreement. So I don't think it was the same transaction. Is it related? Certainly. But as it pertains to transactions between three star and S. E. D. It was not the same transaction. What? So I understand there was a there was a judgment in built more to his favor arising out of the Tarrant County lawsuit, correct? Correct. Okay. Was there any judgment in favor of S. E. D. In that lawsuit? There were and to be fair to the Highland group, they make a an issue of to find. I believe it's two findings that relate to fraud in the court's findings. There was not a judgment that granted any relief in favor of S. E. D. That came out of the Tarrant County case. Okay. Have I answered your honor's question? I think I think so. It's a complicated issue. Yeah. Um, so I understand judicial estoppel is one category that's relevant, but I also do think people's emissions matter. So I want to get back to the question of the yellow brief chart. Can you please respond to that? Because you just say that's just snippets. But can you please respond a quickly to that? You know what I'm talking about? The yellow brief chart, the page 2 to 5 where they go through. This is what you said when it benefited you. Now you're saying the opposite. Can you respond to that? And your honor, I think I think that cuts both ways. I think that and that's why I identify that portion of the record because you have the Highland parties saying the Tarrant County judgment means nothing. S. E. D. Got no relief. It can't be interpretations. Um, what I would tell the court is the question is, do those admissions established privity? Because, like the E. O. C. Versus Jefferson Dental case in that case, the court talks about privity for race, you know, our purposes under Texas law, and it talks about the fact that there are essentially three things that can establish privity for the purposes of race judicata. The first one is control. And the question there was, as applied to this case is, did the Highland Group and openly participate in the prior proceeding to the extent that it was clear they had the right to direct them? Much like the E. O. C. Was held to have done in the underlying case there. There's no evidence that the Highland group had any involvement in that case, such that they were directing the part of the test is representation representation of interest. Did the Highland Group share an identity of interest in the basic legal right that was the subject of the Tarrant County litigation? And the answer is no. They had two other loan sale agreements that they were direct parties to. The Tarrant County case involved the one entity that the Highland Group did not control, so they did not have an identity of interest there. And the third prong of the privity analysis analysis is successor and interest. Did does the Highland Group derive its claims through a party to the prior action? And the answer there again is no. So, Your Honor, that was a long way of trying to answer your question. But my point was, obviously, it's always control has to be of the litigation and not of the litigate tour. I think it's of the litigant, Your Honor. That's my way. Isn't that y'all's whole case? Is that Highlands? The real fraudster here, even though the words were said by three star and not by Island, that is part of the conspiracy claim, Your Honor. But as it first, I think my view of the inquiry for ratio Cata purposes is in the Tarrant County litigation was the Highland Group exercising control over the conduct of three star and the way three star defended or chose to present itself in that litigation. That's why I question. Is your argument that they had to control the litigation? Or is it your argument that they have to control the litigant? Because it seems like in this case, if Highland's not controlling three star, you lose. We're done. So it's see, that is separate, I think, from the question of controlling the litigation. I understand that. But I'm just trying to understand you were argument. You're saying they have to control the litigation and not just the litigant. Well, I think it's control of the litigants conduct in the litigation such that such that essentially the litigant is standing in their shoes because they are directing what the litigant litigate in that case does and does not do. That was my read of how the E. O. C. Versus Jefferson Dental case describes privity for the purposes of race judicata. Does it matter in what capacity S. E. D. Intervened in Tarrant County as a plaintiff? As a defendant, does that matter to the race judicata? You know, Your Honor, honestly, I'm not. I'm not certain because I don't know that S. E. D. Necessarily intervene. Three star simply didn't. It was a general denial. I don't think the Ford Motor Company case that was cited by counsel, it doesn't say that intervention is a plane. If it talks about, um, plaintiff status for the under the wrongful death statute specifically and whether a forum non convenes argument is available. It doesn't speak or lay out a blanket rule as to plaintiff status. I mean, I think if certainly if S. E. D. would have intervened and directly asserted certain claims against three star over and above this limited, isolated claim about title to only a portion of the loans, it would certainly be a different discussion. But that's not the reality. The reality was there was a competing claim as it pertained to what, um, built more funding to was asserting and so they were asserting title to 473 loans, right? And what was S. E. D.'s position when it intervened? It was. It was. It was contesting the title that built more funding to was asserting based on the fact that S. E. D. Essentially, um, claimed a superior interest in those loans or thought it had one and those two parties, my three star the same representations as to the other 800 months, right? There was some certainly S. E. D. Contended it had ownership of those loans based on its loan sale agreement with three star. Yes, sir. All right, let me ask you something we haven't talked about, which is the home servicing contract issue. How do you get around the jury charge that expressly talks about the written contract that's got that jury waiver and all that that written contract as opposed to some sort of oral agreement? Your honor, the loan sale agreement between three star and S. E. D. Said that the parties agreed the loans would be serviced under this existing agreement that was between home servicing and TM property. It didn't say that the parties were going to be parties to that agreement or that S. E. D. Was going to be a party. The it's called the residential service. R. S. S. A. Is how the parties referred to it in everything. Nonetheless, it disclaims third party beneficiary status. I don't think there's anything sufficient in the record to show that S. E. D. Agreed or could have agreed to the jury waiver such that it would be effective. The testimony from both home servicing and S. E. D. Was that the parties had an oral agreement that there was a meeting of the minds as to their agreement. And remember, home service, I early new contract because it sounds like they just adopted all the terms and conditions. And I realize you're arguing that the jury waiver wasn't one of them. But even the jury verdict form questions two and three reference the servicing agreement with home servicing the as though it's particular agreement, not some agreement that's found. I mean, there's no interrogatory that asks if there was an agreement prior to these two. It just says the servicing agree. Correct, Your Honor. And I think the testimony both from home servicing and from S. E. D. Was that the parties had a meeting on the minds that the loans were to be serviced under the general terms as provided for in that predecessor agreement. But didn't that predecessor agreement say there's there that there's to be no third parties involved in that agreement was only home servicing and TM property solutions? It does say that, Your Honor. And that's why I think the jury waiver was not effective as to S. E. D. I think they could agree on things such as what exactly home servicing would do the rate at which it would be done. Um, and certainly there was enough from the home servicing perspective to claim that S. E. D. Owed home servicing the jury was asked about that agreement. I mean, the question was S. E. D. Holdings alleges home servicing breached the existing agreement to service S. E. D. Holdings loans under the contract between home servicing and TM property solutions. So whatever the pros and cons of that, that's what they answered. So you're bound by that. And they're not saying that the jury charge was wrong. They're saying, having given the jury charge that way, that's the contractor subject to for better or for worse. Why isn't that true, Your Honor? The my recollection again of the L. S. A. Is is it basically says how the loans are to be serviced, and it says under the existing agreement, um, there the parties never went beyond that. The loan sale agreement is only between S. E. D. And three star. There was never a signed contract between home servicing and S. E. D. So they had a meeting of the minds of some sort, and that's what the testimony bore out. There was certainly never a document sign that says we agree to all the terms and conditions of the predecessor agreement, at least not one signed between S. E. D. Home servicing. Is there anything in the record that suggests that this is a new agreement? Because it seems like they're talking about just incorporating the existing agreement. Yeah, quite honestly, it sounds like you're cherry picking parts of the agreement that you want to have operative and disavowing things such as the waiver of the jury. I think the only thing being disavowed, Your Honor, is the jury waiver. I think the parties had an implied agreement. The only parts you don't like. Well, let me you're running out of time, so I want to turn to the verdict or the excessive judgment concept again. Let's assume argue endo. We agree with you on liability. Go with you on all of that. But we disagree on the issue of the judgment. Talk to me through that. Eso the lost profits until the closing arguments were in the pleadings in the joint pretrial motion order in any of the documents in the case. Where had you all taken the position that you were seeking lost profits? The only position I'm aware of, Your Honor, was in the testimony. Mr Eden's testament testified, and that's in the record at 11438 through 39. And it was questioning by opposing counsel where he was asked four times over the course of two pages to confirm that S. E. D. S. Expectation was to make $4 million on this on this transaction. That's how this came into the two. That is not proof of lost profits. I mean, you know, Texas has very strict rules on proving lost profits, and it's not just enough to go. Wow. When I invest in this company next door, I'm gonna make a million dollars. Now I can sue for it. I mean, it's not like that. So asking somebody their expectations for whatever reason you might ask, that is not the same thing as finding lost profits. And don't you have to have asked for that in order to recover that? And, Your Honor, I'm not aware of a specific claim in the pretrial order of pleadings where S. E. D. Said that. But as to where the number came from, it came from that provided for. I understand that. Okay. I understand that it was mentioned there. But what I'm saying is nowhere was that pled. No one was that asserted. Nowhere was that argued as lost profits until that closing argument. You show up and go. And now we want another four million that's never been mentioned before. How can you do that? As to the court's question of whether it was mentioned before it was not. So I have 11 last question with regard to the damages. Um, why shouldn't the 551,000 that was received from the Biltmore to entity be subtracted out? I think that could be properly remitted. Your Honor, I don't think I don't think S. E. D. Is gonna sit here and die on that hill. I could see it the court's way, and we could see it the other way, too. It was certainly discussed with the court previously and before judgment was ultimately entered. Well, I mean, that's helpful. I also read a footnote in your brief is saying that two million dollars of the damages are duplicative. Isn't that correct? So long as we're talking about the 10.63, Your Honor? Yeah, I believe there's a there's a legitimate argument that that may have been a double count. Okay. When counsel delivered closing, and I think I can't direct the court to the exact page in footnote, but that's an accurate reading. How do you respond to the I know you're out of time, but I'd like to know how you respond to the rest of the subtractions that Mr Reagan advocated. There were various settlements that he was advocating. I'm just trying to get to a math number, Your Honor. I think if you take the alleged double count out, you end up at $7,005,000. But we still have in there the lost profit component, right? Okay, but I'm asking about settlement numbers. We talked about the lost profits. We not his argument of settlements or payments. I think aside from the built more to settlement, Your Honor, they were all accounted for, except there's one which I don't believe there to be disagreement on. But if you took the $2 million alleged double count out, it would reduce the judgment to $7,005,000. That would include all settlement credits. It would not include the built more to amount, which has not been previously applied. If you took that as well, you would reduce the judgment to around $6.5 million. And that's it. There's no other settlement credit. I thought there was also a 4 25 that that includes that number, Your Honor. Okay. But then if we also disagreed on the lost profits, that'd be another four million off of that. Correct. If the court saw it that way, it would. Okay. All right. Thank you. Your time has expired, and now we will turn to Mr Johnson for your whole two minutes to talk about your client Nations. Thank you, Your Honor. May it please the court? Andrew Johnson on behalf of Howard L Nations Professional Corporation. I'll make it very quick. I think the easiest way to affirm the judgment is to look at the holding escrow agreement on page 5237. Uh, my my client and the nation's law firm is being sued for apparently authorizing Mark Dykes to become the escrow agent on this. And when push comes to shove, when the actual escrow agreement is signed, Mark Dykes signs it unequivocally playing on its face in his individual capacity doesn't mention the nation's law firm at all. Uh, they met. They talk about the loan sale agreement that mentions the nation's law firm. But the loan sale agreement is a contract between three star and S. D. S. We didn't write it. We didn't even know about it. The nation's law firm and for apparent authority. You only look at what the principal apparently authorized. If we didn't know anything about the L. S. A. If we didn't draft it, if we didn't approve it, then it's irrelevant to us. Um, I think the only thing left that they point to potentially is the website. Well, like I just said, even if the website apparently authorizes something the whole at the end of the day, the holding escrow agreement negates that, and it's only on behalf of Mark Dykes. But regardless, as the judge found below in her order, the website clearly shows that the nation's law firm is a litigation firm that Mark Dykes is a litigator. It doesn't say anything in there about transactional services. So that on its face, uh, is not sufficient to show apparent authority. You couple that with the fact that we didn't even know he was the nation's law firm didn't even know that Mark Dykes was involved in this transaction at all. Uh, it's just we believe that I believe that the court should affirm the summary judgment below. All right. Thank you. We have your argument. All right, Mr Reagan, you have a big three minutes to sum it up. Yes, Your Honor. Personal as to Mr Drez left off at the end of his argument, saying that the only thing I believe S. E. D. S. Disavow at this time is the jury trial waiver. I've looked. I was there for the post trial briefing where they said we were never a part of that agreement, and it paid 16 of their brief. S. E. D. Argues the only agreement between home servicing and S. E. D. Was the agreement. S. E. D. Suit on and tried to the jury, not the residential special service degree between TM property and home servicing. So post trial and in their briefing before this court, they have disavowed the entire agreement. Yet they still want the judgment based on a breach of that agreement. Again, simply put, they can't have it both ways. Home service is suing on the same agreement ostensibly right there. There's cross. There's cross claims on that. So what the residential special service agreement that the parties all said they were gonna go by. All right, but to okay to which S. E. D. Holdings is not a party, right? Correct. But in their complaint paragraphs, I believe 81 and 1 77 of their second minute complaint, they said they agreed to assume the to operate under the existing agreement between TM and home servicing. That's why I was in the jury instruction. Basically adopted is what correct. As to respond to the numbers on the excessive point that he just made, he said that all the settlement credits have already been made except possibly the Biltmore one. That is incorrect. The only settlement credit that was applied was the Brown Associates 1.25 million. So it went from, I believe, 10.6 million to whatever the number is now. They subtracted the Brown Associates. There is an additional seller by Mark Dykes of $425,000. But that was after the appeal was the notice of appeal was filed. So that's not reflected in the judgment. But the parties agreed that we're that the Highland group is entitled to that offset, but it's just not in the judgment. But there's an additional 551,578 that S. E. D. Got from the cell. The Biltmore funding two loans that the district court said, believe at least twice. I'm not gonna let them have a double recovery. We'll take care of that time. Judgment. We brought it up and never got taken care of. So they double recovered that 551, 578 about half a million dollars. And one other thing. Do you want to respond to the judicial estoppel piece of the ratio Dakota argument? Do you think that their admissions are finding only if they meet the test of judicial estoppel? Yeah, I'm not quite sure. I understand the question. Uh, the admission should be Bonnie. They made them repeatedly. Uh, so they talked about controlling the litigant controlling the litigation. We didn't really argue that in our brief is a basis for privity. We argued admissions, the special relationship that they alleged that we're all 111 and the same and that there were co spiriters. And the final point I want to make on that is that the big hook and the judgment is the 10.6 million dollar finding on the conspiracy to the fraud. So to the fraud and the conspiracy, we have to have a primary actor, and that's three star, and that's the basis of the conspiracy. So we did action allegedly in the first of the conspiracy with the primary actor, and they already had that judgment against three star. But we're just not even we're not. We weren't parties to the Tarrant County lawsuit, so we're not bound by that. So we get to assert any defense. The primary actor could have asserted to the fraud claim, and that's what we did. So whether or not they brought other parties into the case or didn't bring parties, they intervene. They asserted affirmative claims. There were no cross claims. It says petition intervention and not a cross claim. They should have brought all the claims they had at the time, and they didn't, and they have to live with that. I will say there's plenty of briefing in this case. We appreciate that. We have that. We have your arguments. Appreciate that as well. And so this case is now under submission. Miss Trice will let you let the lawyers go, and we'll take just a minute between this case and the next one. Thank you.